IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION NO._____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| DIGITAL ARBITRAGE, INC., d/b/a "CLOUDBEDS," | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Peter St. John ("Charging Party" or "St. John"). The United States Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleges that Defendant Digital Arbitrage, Inc. d/b/a Cloudbeds ("Defendant" or "Cloudbeds") discriminated against Charging Party based on his disability when it refused to provide a reasonable accommodation for his disability and denied him an employment opportunity because of his disability and/or based on the need for accommodation.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## PARTIES

2.  Plaintiff, the United States Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

3.  Cloudbeds is a remote-first company that is headquartered in San Diego, California.

4.  At all relevant times, Defendant has continuously had at least fifteen (15) employees.

5.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) & (h).

6.  At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.  More than thirty days prior to the institution of this lawsuit, Charging Party Peter St. John filed Charge No. 488-2022-00430 with the EEOC alleging violations of the ADA by Defendant.

8.  On May 25, 2023, after an investigation, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA and inviting

Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The EEOC engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to it.

11. On July 18, 2023, the EEOC issued to Defendant a written Notice of Failure of Conciliation.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Defendant has engaged in unlawful employment practices in violation of Sections 102(a) and (b)(1) of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5) by failing to provide Charging Party with a reasonable accommodation for his disability and by denying him an employment opportunity and refusing to hire him based on his disability. Specifically:

   a. Cloudbeds is a global technology company that has developed a software suite, the Cloudbeds Hospitality Platform, that it offers to independent hotels, hostels, vacation rentals, and hotel groups nationwide and internationally via the internet.

   b. Cloudbeds describes its business as "remote-first, remote always."

   c. Cloudbeds posts the positions it is looking to fill on large employment websites, including Indeed.com and LinkedIn, in order to become "a global company that hires the best talent regardless of location."

   d. Charging Party Peter St. John resides in Northampton, Massachusetts.

   e. St. John is deaf and uses American Sign Language (ASL) to communicate.

f. As of January 2022, St. John had approximately seventeen years of experience in the IT professional support field including work as a Remote IT Director, a Remote IT Engineer and an IT Systems Administrator for various companies.

g. St. John's experience includes, but is not limited to:

   i. supporting end-users remotely within cloud platforms;

   ii. remotely diagnosing and resolving technical hardware and software issues for end-users;

   iii. promoting security measures and best practices;

   iv. supporting various IT Projects; and

   v. acting as a point of contact for internal end-user hardware and software issues.

h. On or about January 31, 2022, St. John applied via Indeed.com to work as a remote IT Administrator position at Cloudbeds.

i. St. John submitted his resume to Cloudbeds with his application for the IT Administrator position.

j. Based on a review of his application materials, on or about February 3, 2022, Cloudbeds advanced St. John's application to the next step in the hiring process, which was a Spark Hire interview.

k. Cloudbeds contracts with Spark Hire, a third-party vendor, to facilitate pre-recorded interviews in the hiring process.

l. During a Spark Hire interview, the candidate is asked recorded questions and provides recorded answers.

m. The recordings are reviewed by Cloudbeds and used to select the candidates who

will continue in the hiring process.

n. On or about February 4, 2022, St. John submitted a request to Spark Hire to for an alternative way to complete the pre-recorded interview, stating that he is deaf, non-speaking and utilizes ASL to communicate.

o. A Spark Hire representative emailed a Cloudbeds Talent Administrator, advised that St. John is deaf and asked if Cloudbeds could provide an alternative way of completing the Spark Hire interview for St. John, including by using ASL to complete the interview.

p. That same day, the Talent Administrator forwarded the Spark Hire email to four other Cloudbeds Human Resources ("HR") employees.

q. On or about February 7, 2022, Cloudbeds discussed St. John's request and said:

   i. It was "not sure if this person would be able to do the job;"

   ii. That "verbal and written communication is a job requirement for the IT Admin," and suggested that it "craft a message referring to the job requirements."

r. The job description for the Cloudbeds IT Administrator position sets forth the following requirements:

   i. Support end-users remotely within cloud platforms…;

   ii. Diagnose and resolve technical hardware and software issues for end-users remotely;

   iii. Promote security measures and best practices;

   iv. Support on IT Projects;

      v. Act as an escalation point of contact for internal end-user hardware and software issues; and

      vi. Other duties as needed.

s. At no time did Cloudbeds communicate with St. John to discuss his request for an alternative means of completing the Spark Hire interview.

t. At no time did Cloudbeds communicate with St. John to discuss his disability or accommodation needs.

u. At no time did Cloudbeds offer St. John, either through Spark Hire or directly, an alternative way to interview for the remote IT Administrator position.

v. At some time between February 4 and February 9, 2022, St. John's request for an alternative way to complete the Spark Hire interview was brought to the attention of Cloudbeds' Chief Executive Officer, Adam Harris.

w. CEO Harris was advised that Cloudbeds was obligated by the Americans with Disabilities Act to accommodate St. John's request.

x. CEO Harris refused to accommodate St. John in the interview process because it is a remote first company and because Cloudbeds would not extend an offer of employment to a deaf person in any event, or similar words to the same effect.

y. As a result, on or about February 9, 2022, Cloudbeds decided to:

> "…just respond to them saying, 'Unfortunately, this is not an accommodation that we can meet. We are a remote first company and the majority of our meetings occur over zoom where verbal communication and hearing are job requirements.'"

z. On or about February 9, 2022, Cloudbeds emailed Spark Hire:

> "Unfortunately, this is not an accommodation that we can meet. We are a remote first company and the majority of our meetings occur over zoom where verbal communication and hearing are job requirements."

aa. On or about February 9, 2022, a Cloudbeds Talent Partner emailed St. John saying:

> "In regards to your request about the Sparkhire interview, this is not an accommodation that we can meet, unfortunately. We are a remote first company and the majority of our meetings occur over zoom where verbal communication and hearing are job requirements."

bb. As of January 31, 2022, St. John was qualified to perform all of the job duties of the remote IT Administrator position at Cloudbeds, with or without reasonable accommodation.

cc. St. John has successfully used the following available technologies to support end-users remotely within cloud-based platforms, to effectively communicate remotely with end-users to diagnose and resolve technical issues, and to escalate technical issues as necessary:

   i. email;

   ii. remote log-in (i.e., screen share);

   iii. messaging/chat platforms (e.g., Slack and Teams);

   iv. video platform chat (e.g., Zoom chat); and

   v. free video relay services ("VRS").

dd. St. John is qualified for the IT Administrator position.

ee. St. John could perform the duties of the IT Administrator position with or without a reasonable accommodation.

ff. Cloudbeds failed to engage in a good faith interactive process to identify reasonable accommodations for St. John in the hiring process.

gg. Cloudbeds refused to provide St. John with a reasonable accommodation in the hiring process.

hh. Cloudbeds rejected St. John and terminated his candidacy because of his deafness.

  ii. Cloudbeds hired three non-deaf individuals to fill the IT Administrator positions for which St. John applied.

  jj. Non-deaf individuals hired for the Cloudbeds IT Administrator position have less experience than St. John.

  kk. Non-deaf individuals hired for the Cloudbeds IT Administrator position have less relevant education than St. John.

  ll. Non-deaf individuals hired for the Cloudbeds IT Administrator positions for which Cloudbeds sought candidates and to which St. John applied are less qualified than St. John.

14. As a result of the foregoing, Charging Party suffered harm.

15. As specifically set forth in Paragraph 13 above, Defendant engaged in unlawful practices in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A) by failing to engage in a good faith interactive process to identify reasonable accommodations and provide Charging Party with a reasonable accommodation.

16. As specifically set forth in Paragraph 13 above, Defendant engaged in unlawful practices in violation of Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B) by terminating Charging Party's candidacy, denying him an employment opportunity and failing to hire him because of his disability and/or the need for accommodation.

17. The unlawful employment practices complained of in Paragraph 13 above were intentional.

18. The unlawful employment practices complained of in Paragraph 13 above caused Charging Party to suffer pecuniary and non-pecuniary damages including, but not limited to, lost compensation and benefits, and mental anguish and emotional distress.

19. The unlawful employment practices complained of in Paragraph 13 above were done with malice or with reckless indifference to Charging Party's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, management, employees, agents, servants, and all persons in active concert or participation with it, from discriminating based on disability including, but not limited to, failing to provide reasonable accommodations to qualified individuals with disabilities that do not constitute an undue hardship.

B. Grant a permanent injunction enjoining Defendant, its officers, management, employees, agents, servants, and all persons in active concert or participation with it, from discriminating based on disability including, but not limited to, denying employment opportunities to qualified individuals with disabilities because of their disabilities and/or because of their need for an accommodation.

C. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make Charging Party whole by providing appropriate lost wages and other compensation and benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E. Order Defendant to make Charging Party whole by ordering instatement or awarding front pay in lieu thereof, in amounts to be determined at trial.

F.  Order Defendant to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

G.  Order Defendant to make Charging Party whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

H.  Order Defendant to pay Charging Party punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

I.  Grant such further relief as the Court deems necessary and proper in the public interest; and

J.  Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Dated: August 14, 2023

Respectfully submitted,

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street NE
Washington, D.C. 20507

JEFFREY BURSTEIN

Regional Attorney
jeffrey.burstein@eeoc.gov

KIMBERLY CRUZ
Assistant Regional Attorney
kimberly.cruz@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

/s/ Anastasia Doherty
**ANASTASIA DOHERTY**
Trial Attorney
anastasia.doherty@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Boston Area Office
15 New Sudbury Street, Room 475
Boston, Massachusetts 02203
(617) 865-3693